J-A18001-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DOMINIC S. BURNO, | |
| Appellant | No. 1572 MDA 2015 |

Appeal from the Judgment of Sentence Entered August 26, 2015
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0005415-2014

BEFORE: FORD ELLIOTT, P.J.E., BENDER, P.J.E., and STEVENS, P.J.E.[*]

CONCURRING AND DISSENTING MEMORANDUM BY BENDER, P.J.E.:

**FILED MARCH 03, 2017**

I concur in the Majority's determination that the trial court did not lack subject matter jurisdiction in this case. I must disagree, however, with the Majority's conclusion that there was sufficient evidence to support Appellant's conviction of Criminal Trespass – Building or Occupied Structure, 18 Pa.C.S. § 3503(a)(1)(i). Consequently, I respectfully dissent on that issue.

Initially, I concur with the Majority that the trial court did not err when it denied Appellant's motion to dismiss the charges for lack of subject matter jurisdiction. Nevertheless, based on undisputed facts solicited at trial, I

_____

[*] Former Justice specially assigned to the Superior Court.

believe a landlord/tenant relationship existed between Appellant and Ms. Hutchinson, and that this case is a civil — not criminal — matter. This Court has explained that "[t]he relation of landlord and tenant is always created by contract, either express or implied. It cannot exist without such contract[.]" **See Jones v. Levin**, 940 A.2d 451, 455 (Pa. Super. 2007) (citations omitted; brackets in original). Further, "the payment of rent is not in all cases essential to the creation of a landlord-tenant relationship[,]" as "courts have in certain cases concluded that a lease existed despite the lack of rent paid, but in such cases, there was evidence of some form of rent substitute, *i.e.*, an alternative benefit or return to the landlord, offered and accepted as consideration." **Id.** (citations omitted). Here, Ms. Hutchinson testified to entering an oral agreement that Ms. Hoffman, Appellant, Chris and Kayla Hodges, and Ms. Hoffman's youngest daughter would move into the Camp Street property, for an unspecified term, in exchange for paying the mortgage, utilities, and the costs of making certain repairs to the property.[1] **See** N.T. Jury Trial, 8/10/15-8/12/15, at 10-13. Ms. Hutchinson received an alternative benefit, or a rent substitute, for allowing the group to live at the Camp Street house, namely repairs and payment of the mortgage.

---

[1] I note that, "[r]eal property, including any personal property thereon, may be leased for a term of not more than three years by a landlord or his agent to a tenant or his agent, by oral or written contract or agreement." 68 P.S. § 250.201.

Accordingly, in my view, a landlord/tenant relationship existed between Ms. Hutchinson and the group, including Appellant.

Because a landlord/tenant relationship existed, I believe Ms. Hutchinson should have utilized the procedures set forth in the Landlord Tenant Act of 1951, 68 P.S. § 250.101 *et seq.*, to lawfully evict Appellant. Indeed, Ms. Hutchinson conceded that she could have filed a landlord/tenant complaint, and that the district justice's office was willing to accept her complaint for a fee. N.T. Jury Trial, at 72-73. Our Supreme Court has explained that the Landlord Tenant Act "sets up the procedure whereby a landlord may repossess premises if he has a *right* to evict the tenant." ***Warren v. City of Philadelphia***, 115 A.2d 218, 221 (Pa. 1955) (emphasis in original). The Landlord Tenant Act states that all other inconsistent acts are repealed and that "[i]t is intended that this act shall furnish a ***complete and exclusive system*** in itself." 68 P.S. § 250.602 (emphasis added). Generally, the statutory procedures set forth in the Landlord Tenant Act, in conjunction with applicable case law and prevailing public policy, tend to provide protections for tenants and discourage landlords from evicting tenants through self-help, which includes acts such as "barring entry by the tenant, removing the tenant's personal property, the use of force or violence, or by deteriorating the physical condition of the premises by reducing or discontinuing utility services or by removing parts of the

structure itself such as doors or windows." **Lenair v. Campbell**, 31 Pa. D. & C.3d 237, 240 (Philadelphia Cty. 1984).[2]  In my opinion, it is improper to sidestep the procedures of the Landlord Tenant Act — which, again, are meant to constitute a complete and exclusive system — and negate the obvious efforts made by our Legislature to protect tenants through the law.[3]  I also disapprove of using the criminal process to resolve landlord/tenant

---

[2] **See, e.g.**, **O'Brien v. Jacob Engle Foundation, Inc.,** 47 Pa. D. & C.3d 557, 558-59 (Cumberland Cty. 1987) (noting that self-help should not be used where judicial procedures, like the Landlord Tenant Act, are available) (internal citations omitted); **Lenair**, 31 Pa. D. & C.3d at 241 ("Upon reviewing the [Landlord Tenant Act] in its entirety, it becomes apparent that self-help eviction is not a remedy under any circumstances.  … [T]he legislature clearly expressed its intention that the Act be the sole source of rights, remedies and procedures governing the landlord/tenant relationship."); **Wofford v. Vavreck**, 22 Pa. D. & C. 3d 444, 453 (Crawford Cty. 1981) ("A landlord desirous of seeking repossession of his leased premises from his tenant for nonpayment of rent must do so either by bringing an action under the Landlord and Tenant Act [], and the related Pennsylvania Rules of Civil Procedure for Justices of the Peace, or by bringing an action in ejectment."). **See also Kuriger v. Cramer**, 498 A.2d 1331, 1337 n.14 (Pa. Super. 1985) (observing that "in Pennsylvania[,] landlords have been enjoined from proceeding with self-help evictions on the basis that their exclusive remedy was an action in ejectment, or by summary process as provided for by the Pennsylvania Landlord and Tenant Act, [] and the related Pennsylvania Rules of Civil Procedure for District Justices") (internal citation omitted).

[3] In **Wofford**, the court addressed why safeguards for tenants are necessary and self-help evictions are disfavored, particularly in cases involving the nonpayment of rent.  The court discerned that self-help evictions are likely to increase the potential for violent confrontations between landlords and tenants, violate the due process rights of tenants, and undermine the implied warranty of habitability recognized by our Supreme Court. **Wofford**, 2 Pa. D. & C.3d at 450-51.

disputes. Eviction cases, including the case at bar, should be brought by aggrieved landlords in the appropriate civil forum, as opposed to burdening and abusing the criminal justice system with such matters.[4]

Notwithstanding, with respect to Appellant's sufficiency of the evidence claim, a person commits criminal trespass "if, knowing that he is not licensed or privileged to do so, he … enters, gains entry by subterfuge or surreptitiously remains in any building or occupied structure or separately secured or occupied portion thereof[.]" 18 Pa.C.S. § 3503(a)(1)(i).[5] Because Appellant began residing in the house as Ms. Hutchinson's tenant, I do not believe that there was sufficient evidence to prove that Appellant did not have a license or privilege to be on the property. The Commonwealth failed to demonstrate that Appellant was lawfully evicted and, therefore, that he was not licensed or privileged to be in the house. Without proving that a lawful eviction took place, Appellant continued to have a viable property

---

[4] The Majority relies on **Commonwealth v. Groft**, 623 A.2d 341 (Pa. Super. 1993), for the proposition that "[t]he subject matter addressed in a civil lawsuit and a criminal prosecution do not have to be mutually exclusive." **Id.** at 344. I note that the Landlord Tenant Act does not appear to be specifically at issue in that case and there was no evidence of either an oral or written lease agreement between the appellant and his mother; instead, this Court considered whether the appellant had an ownership interest in the home he shared with his mother where he had contributed money for purchasing the land and had helped construct the home. **Id.**

[5] "A person is privileged … if he may naturally be expected to be on the premises often and in the natural course of his duties or habits…." **Commonwealth v. Benito**, 133 A.3d 333, 335 (Pa. Super. 2016).

interest in the house, and his license or privilege to remain on the property persisted. It is the Commonwealth's burden to prove each element of a crime beyond a reasonable doubt, and it has not met its burden of proving a lack of license or privilege in this case. *See Commonwealth v. Thomas*, 561 A.2d 699, 704 (Pa. 1989) (citations omitted) ("To sustain a conviction, the facts and circumstances which the Commonwealth must prove must be such that every essential element of the crime is established beyond a reasonable doubt."). Therefore, I would conclude that the evidence was insufficient to support Appellant's conviction of criminal trespass and, as a result, I would vacate his judgment of sentence.[6]

_____

[6] Because I would vacate Appellant's judgment of sentence on that basis, I would not address Appellant's third issue raised on appeal regarding a question of law posed by the jury.